GDA:CM
F#2004R02109

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ APR 20 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

LARRY BRONSON,

        Defendant.

- - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 05-714 (S-1) (NGG)
(T. 18, U.S.C., §§ 1962(d),
1963, 1956(h), 401, 2 and 3551
et seq.)

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>The Enterprise</u>

    1.   La Cosa Nostra ("LCN") was a nationwide criminal enterprise also known as "the mafia" that operated in the Eastern District of New York, other parts of the United States and Canada. LCN operated through entities known as "families." The five New York-based LCN families were the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families. LCN constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. LCN engaged in, and its activities affected, interstate and foreign commerce.

2

2. Each LCN family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" or "capodecinas." These groups, which were referred to as "crews," "regimes," or "decinas," consisted of "made" members of LCN. These made members were known as "soldiers," "friends of ours," "good fellows," or "buttons." Persons who were not inducted into an LCN family but who committed criminal activity with, on behalf of or under the protection of an LCN family were known as "associates."

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest ranking members of an LCN family. The head of each LCN family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy for his LCN family and resolving disputes between members and associates of his LCN family and members and associates of other criminal organizations, including but not limited to other LCN families. Each LCN family boss was responsible for approving

all significant actions taken by members and associates of their respective families, including murder.

5.   The boss, underboss and consigliere of an LCN family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of each crew.  In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.

6.   The ruling body of LCN was known as the "Commission," the membership of which at various times included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

The Purposes of the Enterprise

7.   LCN constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The principal purpose of LCN was to generate money for its members and associates.  This purpose was implemented by members and associates of LCN through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking and

4

robbery. The members and associates of LCN also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence. The members and associates of LCN further sought to preserve and protect the power and profits of LCN through the use of intimidation, violence and threats of violence.

        8. Although the primary purpose of LCN was to generate money for its members and associates, the members and associates at times used the resources of LCN to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of LCN. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

        9. The members and associates of LCN engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise, as well as keeping victims in fear of LCN and its members and associates through violence, intimidation, witness tampering, obstruction of justice and threats of violence.

Means and Methods of the Enterprise

10.     The defendant LARRY BRONSON and other members and associates of LCN participated in the conduct of the affairs of the enterprise by the following means and methods:

a.     Obstructing justice and tampering with witnesses in <u>United States v. Steven E. Kaplan et al.</u>, Northern District of Georgia Criminal Docket No. 99 CR 609 (herein "<u>United States v. Kaplan</u>"), to further the interests of the enterprise by various means, including making threats to their safety and reputation in order to persuade witnesses to testify falsely to the grand jury;

b.     Bribing and attempting to bribe witnesses in <u>United States v. Kaplan</u> so they would testify favorably, both to the grand jury and at trial, to the interests of the enterprise;

c.     Facilitating potential retaliation against an individual by revealing his suspected cooperation to members of the enterprise; and

d.     Using BRONSON's connection to the enterprise to make implied threats of physical violence against various individuals, including extortion targets.

Role of the Defendant

11.     At all times relevant to this Indictment, the defendant LARRY BRONSON conspired with members and associates of LCN, engaging in a range of activities as listed above to

facilitate the operations of the enterprise.  BRONSON used his role as an attorney to, among other things, help members of LCN: (a) violate court orders, (b) tamper, through threats and intimidation, with individuals subpoenaed to the grand jury and (c) attempt to bribe witnesses to testify untruthfully to the grand jury and at trial.  BRONSON also used his connections to LCN to, among other things, attempt to extort individuals.

<u>COUNT ONE</u>
(Racketeering Conspiracy)

12.   The allegations contained in paragraphs 1 through 11 are realleged and incorporated as if fully set forth in this paragraph.

13.   On or about and between March 1, 1999 and July 1, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LARRY BRONSON, together with others, being a person employed by and associated with LCN, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts indictable under the following provisions of federal law:

        a. Title 18, United States Code, Section 1512 (witness tampering);

        b. Title 18, United States Code, Section 1503 (obstruction of justice);

        c. Title 18, United States Code, Section 1513 (retaliation against a witness or informant);

        d. Title 18, United States Code, Section 1510 (obstruction of a criminal investigation); and

        e. Title 18, United States Code, Section 201 (bribery); and

acts involving extortion, in violation of New York Penal Law, Section 155.35.

    14. It was a further part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

    (Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWO
(Contempt of Court)

    15. On or about May 14, 2003, within the Southern District of New York and elsewhere, the defendant LARRY BRONSON, together with others, did knowingly and willfully disobey and resist a lawful writ, process, order, rule, decree and command of a court of the United States, to wit: the United States District

8

Court for the Eastern District of New York, by assisting an individual on supervised release to meet with a convicted felon in violation of a court order.

(Title 18, United States Code, Sections 401, 2 and 3551 et seq.)

## COUNT THREE
(Money Laundering Conspiracy)

16. In or about and between July 2001 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LARRY BRONSON, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title 21, United States Code, Section 846, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

9

## COUNT FOUR
(Contempt of Court)

17.  In or about and between July 2001 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LARRY BRONSON, together with others, did knowingly and willfully disobey and resist a lawful writ, process, order, rule, decree and command of a court of the United States, to wit: the United States District Court for the Eastern District of New York, by assisting an individual on pretrial release to violate the terms of his release imposing home confinement by misrepresenting the individual's whereabouts to officers of the United States Pretrial Services for the Eastern District of New York.

(Title 18, United States Code, Sections 401, 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #1999R00202
FORM DBD-34
JUN. 85

No. CR

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

*vs.*

LARRY BRONSON.

Defendant(s).

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 1962(d), 1963, 1956(h), 401, 2 and 3551 et seq.)

*A true bill.*

_____
                                        *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

_____
                                        *Clerk*

*Bail, $* _____

*AUSA CARYN MYERS (718) 254-6293*